Emilio Ghinaglia, Plaintiff and Appellee, *v.* Manuel V. Domenech, Treasurer of Puerto Rico, Defendant and Appellant.

No. 5897. Argued March 9, 1933.—Decided April 20, 1933.

*Charles E. Winter, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for appellant. *Leopoldo Feliú* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

On or about August 14, 1930, Emilio Ghinaglia imported from Venezuela into this island, through the city of San Juan, 12,622 pounds of sole leather. As soon as the merchandise was unloaded, the Treasury Department of Puerto Rico attached the same, claiming that such merchandise was subject to a tax of eight cents per pound according to subdivision 31 *a* of section 16 of the Internal Revenue Act, that is, Act No. 85 of August 20, 1925, as amended. The sale of the goods having been authorized, the plaintiff-appellee proceeded to sell the merchandise on different dates and in various lots, paying under protest, on each occasion, the corresponding tax in accordance with the above-mentioned subdivision. The plaintiff-appellee claims that the said subdivision 31 *a* of section 16 of the Internal Revenue Act is unconstitutional, and that therefore he is not bound to pay the said taxes which he paid under protest to the Treasurer of Puerto Rico. According to the plaintiff, the statutory provision cited is unconstitutional because it violates the twenty-second paragraph of section 2 and the last proviso in section 3 of our Organic Act. Other grounds of unconstitutionality are urged; but as the lower court declared the attacked subdivision to be null and void on the sole ground that the tax thereby levied is not uniform, we shall consider only those provisions of the Organic Act which have reference to uniformity in taxation.

The appellant urges that the court below erred in holding that the said subdivision is unconstitutional because it imposes a tax which is not uniform on the same kind of

articles, and that the judgment is contrary to law, as it does not conform to the pleadings.

Section 16 of Act No. 85 to provide revenues for the People of Puerto Rico, etc., approved on August 20, 1925 (Session Laws, p. 584), and amended on June 3, 1927 (Act No. 17, Session Laws, p. 458), imposes an internal revenue tax on certain articles which are listed in the said section. No tax on sole leather appeared in said section as thus amended, but in 1930 an amendment to that section was adopted (Act No. 74 of 1930, Session Laws, p. 454) whereby subdivision 31 *a* was added thereto levying ''on all leather imported to be sold or used in Porto Rico, a tax of eight (8) cents a pound.''

Section 62 of the said act, as amended in 1927,. reads as follows:

''There shall be levied and collected, once only, on the sale of any articles the object of commerce, not taxed under Section 16 of this Act or exempted from taxation as provided in Section 83 of the same, and at the time of sale in Porto Rico, a tax of two (2) per cent on the price or value of the daily sales of such articles, whether such sales are for cash or on credit, which tax shall be paid at the end of each month by the person making such sale.''

According to section 16, as amended in 1930, the only leather taxed is the one imported to be sold or used in Puerto Rico. This section does not tax the leather produced in this island and, as section 62 imposes on any articles the object of commerce, not taxed by section 16 or exempted from taxation by section 83, a tax of 2 per cent on the price or value of the daily sales of such articles, the result is that the leather produced in Puerto Rico must pay this tax of 2 per cent, since it is not taxed under section 16. We do not believe that the act can be construed in any other way. Imported leather, regardless of its price, must pay eight cents a pound. The tax is fixed per unit of weight. Leather produced locally is subject to taxation according to the sale price or value, which is subject to market fluctuations.

Section 3 of our Organic Act, as amended on March 4, 1927, in authorizing our Legislature to levy internal revenue taxes, provides:

That the internal-revenue taxes levied by the Legislature of Porto Rico in pursuance of the authority granted by this Act on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the Island; *Provided,* That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Porto Rico. The officials of the Customs and Postal Services of the United States are hereby directed to assist the appropriate officials of the Porto Rican government in the collection of these taxes.

There is no doubt that the attacked subdivision establishes a clear discrimination between the leather produced locally and that produced abroad. In the one case, a tax is levied on each unit of weight; in the other case, the tax is levied on the sale price. This interpretation results from the clear and definite provisions of the act. A discrimination is made which favors an article produced locally to the prejudice of the same article imported from abroad. The Organic Act of Puerto Rico expressly forbids such discriminations. In view of the clearness of the statute, we could well dispense with citations of precedents. It is not easy to find them in the States of the Union where there are no laws identical with or similar to our own statute, which imposes a tax on sales. By analogy, we shall refer in this opinion to some illustrative citations and cases that deal with taxes levied on nonresident sellers which indirectly affected the article sold. The following excerpt is taken from Cooley on Taxation, vol. 1, p. 768:

"Likewise, a license fee or tax on persons selling goods is invalid if it discriminates against goods produced or brought in from outside the state, in favor of goods produced or manufactured within the state. So a city license tax cannot discriminate against sales of property coming from outside the city. Likewise, a tax on ped-

dlers violates the equal protection of the laws where it is applicable only to peddlers offering for sale goods manufactured within the state, since a discrimination in favor of foreign goods."

The case of *Ex-parte Hines,* 164 Pac. 339, decided by the Supreme Court of California, is also interesting. This case did not deal with a tax levied on a vendor of a particular article, but with a business which was sought to be favored. In the city of Venice, California, by virtue of an ordinance, a tax of $12 per annum was imposed on any person, firm, or corporation conducting, managing, or carrying on a laundry. A tax of $120 per annum was levied in the same ordinance on any person, firm, or corporation owning, operating, or maintaining a wagon or other vehicle for the delivery of laundry work to and from any laundry situated outside of the city limits. A tax of $120 per annum was also levied on any person, firm, or corporation running, operating, or maintaining an agency for the collection or delivery of laundry work on behalf of any laundry situated outside of the limits of the city of Venice.

The ordinance declared it to be unlawful to carry on any business therein described without a license from the city. The Supreme Court of California held that this ordinance was null and void because it was discriminative. "The license provisions in question," the court held, "are plainly devised as a protective tariff for the benefit of laundries located in the city of Venice or laundry wagons doing business with laundries located in the city of Venice, and apparently they have no other purpose."

In *Leonard* v. *Reed,* 104 Pac. 410, decided by the Supreme Court of Colorado, the court said:

"A state may require a license to engage in business, but such license must be uniform, and not discriminate in favor of one class and against another, nor in favor of its own citizens as against those of other states, or require a license which will constitute a regulation of interstate commerce; and a statute not uniform in its operation, but in favor of one and against another, although each

is engaged in the same business and vending the same character of articles in a similar way, is unconstitutional.''

In that case, there was under consideration a section of the Revenue Act of Colorado providing that whenever any person, firm, or corporation would, subsequent to the first day of May of any year, bring or send into any county, any stock of goods or merchandise to be sold or disposed of in a place of business temporarily occupied for their sale without the intention of engaging in permanent trade in such place, the owner, consignee, or person in charge of said goods or merchandise shall pay a certain tax. In construing this section of the act, the Supreme Court of Colorado said:

"Tested by our Constitution and the principles deducible therefrom, we find the law wanting in validity. It imposes a tax upon goods and merchandise brought into any county subsequent to the 1st day of May in any year for temporary lodgment and sale, and by necessary implication relieves goods of a similar character brought into the same county at the same time from the burden of such tax if they be not placed upon the market. This discrimination robs the law of the indispensable requisite that taxes shall be uniform upon property within the jurisdiction of the body imposing them. If a certain character of property brought into a county for a particular purpose after the first day of May in any one year may be subjected to a tax, then all other property within the same jurisdiction of a similar character must be subjected to the same tax, in order to satisfy the provision of our Constitution on the subject of uniformity of taxation.''

After an examination of subdivision 31 a, claimed to be unconstitutional, in the light of the provisions of the Organic Act which require uniformity in taxation and of the provision wherein it is definitely prescribed that no discrimination shall be made between articles imported from the United States or from foreign countries and similar articles produced or manufactured in Puerto Rico, the conclusion is unavoidable that said subdivision is not valid, as it violates our Organic Act.

It is also urged that the judgment rendered does not conform to the pleadings. It is true that the complaint alleges that leather produced or manufactured in Puerto Rico is not subject to taxation. It has been proved, however, that it is subject to a tax different from and lower than that levied on imported leather by subdivision 31 *a*. This discrimination of which we take judicial notice, since it appears on the face of the law, is sufficient to establish the unconstitutionality of the statute, regardless of the fact that domestic leather is subject to a tax and that it has been alleged that it is subject to none. The truth is that domestic leather is subject to a 2 per cent tax on the price or value of sales, and that imported leather is subject to a tax of eight cents a pound.

The judgment appealed from should be affirmed.